IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Charles Streeter, and Keith Bryant individually and on behalf of a class, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 08 C 732 |
| vs. | ) ) ) | Judge Castillo |
| | ) ) | Magistrate Cole |
| Sheriff of Cook County, and Cook County, Illinois, | ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
APPLICATION FOR TEMPORARY RESTRAINING ORDER
AND/OR PRELIMINARY INJUNCTION**

Now comes the Plaintiffs, by and through their attorneys, Thomas G. Morrissey, Ltd., and Robert H. Farley, Jr., Ltd., and submits this Memorandum In Support Of Plaintiffs' Application For Temporary Restraining Order and/or Preliminary Injunction against the Defendants, and states as follows:

**1. Introduction**

The Plaintiffs in this case are currently pretrial detainees housed in Division 5 at the Cook County Department of Corrections. As pretrial detainees at the Jail, the Plaintiffs are subject to strip searches at the Jail. Plaintiffs, as representatives of a class seeking injunctive relief, are not challenging the need to conduct strip searches at the Jail but rather maintain that the strip searches in Division 5 are unreasonable under the Fourth Amendment because they are

1

conducted in a highly intrusive manner due to the fact that upwards of 45 pretrial detainees are searched together, for an extended period of time, which affords no privacy to the pretrial detainees being searched.

The Plaintiffs maintain that their rights are violated under the Fourth and Fourteenth Amendments because there is no privacy afforded them during the group strip searches. The Plaintiffs and putative class in Division 5 are subjected to unreasonable group strip searches with upwards of 45 pretrial detainees with no privacy in violation of the Fourth Amendment. The unreasonableness of these group strip searches is demonstrated by the fact that the Sheriff is able to afford privacy to male pretrial detainees who are housed in Divisions 1, 8 and 10 when strip searched. The unreasonableness of the group strip searches to the Plaintiffs is further demonstrated by the fact that the Sheriff is able to afford privacy to the 240-300 newly admitted detainees when they are strip searched in the hallway of the RCDC. The public strip searching of the male detainees in Division Five is unreasonable because the Jail could easily deploy the privacy screens used in the female housing divisions, the hallway of the RCDC and the other housing divisions to provide privacy during these strip searches.

The Plaintiffs and putative class rights to Equal Protection under the Fourteenth Amendment are violated when the Sheriff does not afford them privacy during strip searches but the Sheriff is able to provide privacy to female detainees at the Jail during strip searches and also is able to provide privacy to hundreds / thousands of male detainees at the Jail.

**2.  Overview Of Strip Search Procedures For Plaintiffs In Division 5**

The Plaintiffs and the class they seek to represent, are strip searched in the Clothing Room in Division Five upon their return to the Division from Court. The Clothing Room in

Division 5 is a large, self-contained room with one door. The Sheriff currently uses the Clothing Room in Division 5 to conduct strip searches of upwards of 45 male inmates at a time without any privacy. (See Exhibit "B" at page 6) Upon entering the room, the men are ordered to line up against the wall, and remove all their clothing. The men are then ordered to extend their arms and legs apart and to squat three or four times. They remain naked in each other's presence for an extend period of time and the room stinks of body odor. (Plts. Comp. at par. 4)

### 3. All Female Detainees Have Privacy During Strip Searches

Since 2001, all searches of female detainees returning to their housing division have been conducted with privacy screens and done individually. (Plts. Compl. at par. 12) The Sheriff put this procedure in place after the filing of *Wilkes v. Sheahan,* Case No. 01 C 1592 (N.D. Ill.) (Judge Darrah) which challenged the Sheriff's practice of strip searching female detainees in group settings without any privacy.

### 4. All Newly Admitted Male Detainees Have Privacy During Strip Searches

Since February, 2007, all searches of newly admitted male inmates have been conducted with privacy screens. Each day approximately 240-300 newly admitted detainees are searched behind privacy screens erected in the hallway of the Receiving, Classification and Diagnosis Center ("RCDC"). (Plts. Compl. at par. 13) The Sheriff put this procedure in place after the filing of *Young v. County of Cook,* Case No. 06 C 0552 (N.D. Ill.) (Judge Kennelly). See Exhibit "A" - Affidavit of Director Daniel Brown)

### 5. Some Male Detainees Have Privacy During Strip Searches

The fact that the Sheriff provides privacy to those group of male inmates returning from Court who are housed in Divisions 1, 8, 10 recently came to light as a result of a Supplemental

Expert Report tendered by the Sheriff in *Bullock v. Sheahan,* Case No. 04 C 1051 (N.D. Ill) (Judge Bucklo) [1]. After touring the Jail on December 12, 2007, the Sheriff's Expert commented in his supplemental report that privacy screens were being used for strip searches of male inmates in the Receiving area; in Divisions 1, 8 and 10. (See Exhibit "B" - excerpts from Moyer' report at pages 5-6, 8, 11)

### 6. Fourth Amendment

In *Bell v. Wolfish,* 441 U.S. 520 (1979), the Supreme Court identified the framework in which searches of pretrial detainees in custody are to be analyzed.

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case, it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. *Id.* at 559 (citations omitted).

### A. The Scope Of The Particular Intrusion

The scope of searches which require male inmates returning from court to be strip searched in group settings with no privacy is not justified. In *Calvin v. Sheriff of Will County,* 405 F.Supp.2d 933, 938-939 (N.D. Ill. 2005), the Court stated:

> Courts have repeatedly held that strip searches that include visual inspection of the anal and genital areas are inherently invasive. The Supreme Court stated in *Bell* that a strip search and visual inspection of inmates' body cavities "instinctively give us the most pause." 441

---

[1] Judge Bucklo certified the following class in *Bullock*:
> All male inmates who, on or after February 12, 2002, have been subjected to defendant's policy and practice of strip searching a male inmate upon his return to the jail following a court appearance at which court appearance a specific case or charge against the inmate was dismissed when no other cases, charges, warrants or holds were pending against that inmate which warranted that inmate's continued detention at the jail.

U.S. at 558-59. In *Mary Beth G. v. City of Chicago,* 723 F.2d 1263, 1272 (7th Cir. 1983), the Seventh Circuit described strip searches as "demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission." See also *Swain v. Spinney,* 117 F.3d 1, 7 (1st Cir. 1997) (visual cavity searches "impinge seriously" upon Fourth Amendment values); *Chapman v. Nichols,* 989 F.2d 393, 395 (10th Cir. 1993) ("There can be no doubt that a strip search is an invasion of privacy of the first magnitude."); *Thompson v. County of Cook,* 2005 WL 1950363, at *7 (N.D.Ill. Aug. 8, 2005) ("It is beyond argument that the search involved [a strip search including visual cavity inspection] is extremely intrusive.")

### B. The Scope Of The Intrusion Was Excessive.

In the instant case, male inmates returning from court are not individually strip searched in privacy but are strip searched in groups of upwards of 45 male inmates at a time without any privacy. In *Campbell v. Miller,* 499 F.3d 711 (7th Cir. 2007), the Seventh Circuit recently addressed whether an otherwise permissible strip search of an individual suspected of possessing marijuana was unreasonable because it was done in public. The Court held:

> There is no dispute in this record that the search was conducted in an area where Campbell's friend was able to watch and where others could have done so as well. Moreover, there was nothing before the jury that suggested any conceivable exigency that could be met only by strip-searching Campbell in public, on the spot. In our view, those factors conclusively tip the balance under *Wolfish* in Campbell's favor. *Id.,* at 719.

The Sheriff's strip search practice is carried out in an unreasonable and unnecessarily degrading manner because it is done in public, with up to 45 detainees at a time. In *Campbell*, the Seventh Circuit recognized that "privacy rights at issue here is at its highest, no matter where the search was conducted." *Id.* at 718. The public manner in which strip searches are conducted on male inmates affords no privacy to the individuals undergoing strip searches.

The Jail is able to provide female inmates privacy during strip searches. The Jail is able

to afford privacy during strip searches to the 240-300 newly admitted detainees into the Jail. The Jail is able to afford privacy during strip searches to the hundreds and thousands of detainees housed in Divisions 1, 8 and 10 at the Jail. Yet, the Jail is unable to provide any privacy to the Plaintiffs and putative class during strip searches when they return from court.

Accordingly, in the instant case, the strip searches of the Plaintiffs and class affords no individual privacy and the intrusion was excessive.[2] See *Hills v. Bogans,* 735 F.2d 391, 394-395 (10th Cir. 1984) (strip search violation under *Bell v. Woflish* where the detainee was strip searched in a "public area" at the Jail "in a room in which ten to twelve people were milling about).

### 7. Fourteenth Amendment - Equal Protection

Under the Constitution, gender-based classifications are afforded heightened scrutiny. *J. E. B. v. Alabama ex rel. T. B.,* 511 U.S. 127, 136 (1994). Once an individual is able to establish the existence of a gender-based distinction, "[p]arties who seek to defend gender-based government action must demonstrate an 'exceedingly persuasive justification' for that action." *United States v. Virginia,* 518 U.S. 515, 531 (1996).

A policy under which female arrestees are routinely subjected to strip searches while similarly situated males are not establishes a significant disparity in treatment based on gender.

---

[2] See *Stanley v. Henson,* 337 F.3d 961, 965 (7th Cir. 2003) (the scope of the intrusion, a clothing exchange by the pretrial detainees was not excessive as she was not required to disrobe completely; she was allowed to disrobe in a semi-private setting where only the officer and the detainee were present; and she was not required to submit to a visual inspection of any body cavities). *Stanley,* at 967, reaffirmed *Mary Beth G.* ("This Court has noted that 'the more intrusive the search, the closer governmental authorities must come to demonstrating probable cause for believing that the search will uncover the objects for which the search is being conducted." *Mary Beth G.,* 723 F.2d at 1273. )

*Mary Beth G. v. City of Chicago,* 723 F.2d 1263, 1273 (1983). In *Mary Beth G.,* at 1274, the Circuit Court stated:

> The policy of the City of Chicago under which female arrestees were routinely subjected to strip searches while similarly situated males were not established a significant disparity in treatment based on gender. Accordingly, the policy is subject to scrutiny under the equal protection clause of the fourteenth amendment, which requires that the party seeking to uphold a policy that expressly discriminates on the basis of gender must carry the burden of showing an "exceedingly persuasive justification" for the differing treatment. *Mississippi University for Women v. Hogan,* 458 U.S. 718, - - - - - - (1982). The burden is met "only by showing at least that the classification serves 'important governmental objectives and that the discriminatory means employed' are 'substantially related to the achievement of those objectives.'" *Id.* (cites omitted).

In *Gary v. Sheahan,* 1998 U.S. Dist. LEXIS 13379, at 19, the District Court granted summary judgment in favor of the plaintiffs under their equal protection claim. The District Court stated:

> The plaintiffs Equal Protection claim is based on the different treatment of male and female detainees at the Jail after a judicial determination that there is no longer a basis for their detention. As this court stated in its earlier opinion, disparate treatment of men and women is unconstitutional unless such treatment serves important governmental objectives and is substantially related to achievement of those objectives. (cites omitted)

The Sheriff will fail to demonstrate an "exceedingly persuasive justification" under the Equal Protection Clause for affording privacy during strip searches of female detainees but affording no privacy during strip searches of the Plaintiffs and the putative class. Moreover, the Sheriff will also fail to demonstrate an "exceedingly persuasive justification" why other similarly situated male inmates housed in Divisions 1, 8 and 10 are afforded privacy during strip searches but the Plaintiffs and putative class housed in Division 5 are not afforded privacy during

strip searches of the Plaintiffs and the putative class.[3]

### 8. Plaintiffs Satisfy The Requirements Of A Temporary Restraining Order And/Or Preliminary Injunction

A Preliminary Injunction may be granted if the movant demonstrates "(1) that the case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that the party seeking relief will suffer irreparable harm if the injunction is not granted." *Duct-O-Wire Co. v. U.S. Crane, Inc.*, 31 F.3d 506, 509 (7th Cir. 1994) citing *Storck USA, L.P. v. Farley Candy Co.*, 14 F.3d 311, 313-14 (7th Cir. 1994). Once the movant has satisfied these three threshold requirements, the Court then balances the harm to the non-movant if the injunction is granted against the harm to the movant if the injunction is denied. *Vencor, Inc. v. Webb*, 33 F.3d 840, 845 (7th Cir. 1994). This balance is conducted on a sliding scale: "the greater the moving party's chance of success on the merits, the less strong a showing must it make that the balance of harms is in its favor; conversely, the less likely it is that the moving party will succeed on the merits, the more the balance need weigh toward its side." *Duct-O-Wire*, 31 F.3d at 509. In addition, the court must take into account the public interest at risk if injunctive relief is granted or denied. *Id.*

In this case, the Plaintiffs have a high degree of success on the merits under the Fourth Amendment as an unreasonable and abusive strip search is unconstitutional . In recognition of the principle that pretrial detainees retain their Fourth Amendment rights within the jailhouse wall, the Supreme Court has held that searches of pretrial detainees in jail must be reasonable

---

[3] The Plaintiffs are housed in Division 5 which is a medium security facility. Division `1 is a medium security facility. Division 10 is a maximum security facility. (Plts. Compl. at par. 15.

8

within the meaning of the Fourth Amendment. *Bell v. Wolfish,* 441 U.S. 520, 558, 60 L.Ed2d 447, 99 S.Ct. 1861 (1979).

Accordingly, even when it is determined that pretrial detainees can lawfully be strip searched, the "searches must be conducted in a reasonable manner" and an "abus[ive] [search] cannot be condoned."[4] *Bell* at 560. See: *Polk v. Montgomery Co., Md.,* 782 F.2d 1196, 1201-02 (4th Cir. 1986) ("[Whether the strip search was conducted in private] is especially relevant in determining whether a strip search is reasonable under the circumstances."); see also *Logan v. Shealy,* 660 F.2d 1007, 1013 (4th Cir. 1981) (indiscriminate strip search policy cannot be justified simply because of administrative ease).[5] In order to make a determination whether a search was

---

[4] The Seventh Circuit has recognized in a strip search case where a traveler was partially strip searched by a customs inspector that had the "[traveler's] version alleging extreme intimate personal contact and intrusion been accepted by the district court this case could have been more difficult." . . . "Our view of the of this case does not mean, however, that Customs agents have free license to exceed what is reasonable and proper under the law in order to accomplish their important responsibilities. They must be sensitive to their intrusive powers and not abuse and misuse those powers. . ." *Saffell v. Crews,* 183 F.3d 655, 657, 659 (7th Cir. 1999).

[5] In *Skustenis v. Jones,* 81 F.Supp. 2d 1228, 1234 (N.D. Alabama 1999), the Court did not accept the Sheriff's argument that due to limited facilities the female pre-trial detainees had to be strip searched. The Court cited and agreed with the following portion of Judge Posner's dissent in *Johnson v. Phelan.*
> There are different ways to look upon the inmates of prison and jails in the United States in 1995. One way is to look upon them as members of a different species, indeed as a type of vermin, devoid of human dignity and entitled to no respect. . . I do not myself consider the 1.5 million inmates of American prisons and jails in that light. . . . We should have a realistic conception of the composition of the prison and jail population before deciding that they are a sum entitled to nothing better than what a vengeful populace and a resource-starved penal system choose to give them. We must not exaggerate the distance between "us," the lawful one, the respectable ones, and the prison and jail population; for such exaggeration will make it easy for us to deny that population the rudiments of human consideration.
> *Johnson v. Phelan,* 69 F.3d 144, 151-52 (7th Cir. 1995) (Posner, J. dissenting)

9

reasonable, courts consider issues such as privacy, hygiene, the training of those conducting the searches, and whether the search was conducted in a professional manner. See *Del Raine v. Williford,* 32 F.3d 1024, 1941-41 (7th Cir. 1994) and the cases cited there.

Given the fact that in Division 5 the Clothing Room is a large, self-contained room and is used to strip search court returns of upwards of 45 inmates at a time without any privacy, and given a privacy screen could be easily positioned in the clothing room, there is no reason for the Plaintiffs to be subjected to an unreasonable and abusive strip search.

The Plaintiffs will also suffer irreparable harm if the injunction is not granted. Given that in *Mary Beth G. v. City of Chicago,* 723 F.2d 1263, 1272 (7th Cir. 1983), the Court referred to strip searches as "demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission," to permit the Plaintiffs to undergo this procedure in an abusive manner cannot be condoned or tolerated.

The Plaintiffs furthermore, satisfy the requirement that there is no adequate remedy at law to compensate for the humiliation, terror, embarrassment and dehumanizing treatment which is entailed in an unreasonable and abusive strip search.

### 9. Conclusion

The Plaintiffs Streeter and Bryant are seeking the entry of a Temporary Restraining Order pending a hearing on their request for a Preliminary Injunction. In the event that the Defendants agree to the entry of an Order that the two named Plaintiffs will be strip searched with privacy when they return from Court, then this Court can set a briefing schedule for the Plaintiffs to file

their Motion for Class Certification and allow the Plaintiffs expedited discovery and set this matter for hearing on Plaintiffs' Request for a Preliminary Injunction.

/s/ Thomas G. Morrissey
One of Plaintiffs' Attorney

Thomas G. Morrissey, Ltd.
10249 S. Western Avenue
Chicago, IL 60643
(773) 233-7900

Robert H. Farley, Jr., Ltd.
1155 S. Washington
Naperville, Il. 60540
(630)-369-0103

## CERTIFICATE OF SERVICE

  I, Robert H. Farley, Jr., one of the Attorneys for the Plaintiffs, deposes and states that he caused the foregoing Plaintiffs Memorandum In Support Of Application For Temporary Restraining Order And/Or Preliminary Injunction to be served on the Office of the Cook County State's Attorney, Attn: Patrick Driscoll by faxing a copy on February, 5, 2008 to 312-603-3000 and by faxing a copy to the Sheriff of Cook County, Attn: Peter Kramer at 312-603-3305.

                 */s/ Robert H. Farley, Jr.*