IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Charles Streeter and Keith Bryant individually and on behalf of a class, | ) ) ) | |
| Plaintiffs, | ) ) ) | No. 08 C 732 |
| vs. | ) ) | |
| SHERIFF OF COOK COUNTY, And COOK COUNTY ILLINOIS | ) ) ) ) | Judge Ruben Castillo Magistrate Cole |
| Defendants. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

NOW COME the Defendants, **Thomas Dart, Sheriff of Cook County and County of Cook**, by their attorney, RICHARD A. DEVINE, State's Attorney of Cook County, and through his assistant, Francis J. Catania, and in Response to Plaintiffs' application for Temporary Restraining Order and/or Preliminary Injunction move this Honorable Court to Deny the application and to dismiss the Complaint. In additional support thereof Defendant states as follows:

**I    PLAINTIFFS' COMPLAINT AND THE APPLICATION FOR PRELIMINARY INJUNCTION ARE MOOT BY FACTS OF THE CASE**

Plaintiffs have raised an improper claim with no valid factual basis. Facts contained the affidavit of Correctional Superintendent Gary Hickerson (attached as Exhibit A) and the photographs authenticated by the affidavit, as well as the written policy of the Division V Clothing Room establish that the Complaint and application for injunctive relief bear no resemblance to reality. The claim for injunctive relief is moot. In December 2007, prior to the filing of the Complaint in this matter, privacy screens were in use in the clothing room of Division V and used for strip searching court returns. Despite this, Counsel for the Plaintiffs has not terminated his suit. Instead, he seeks to continue a lawsuit brought solely out of opportunism. Superintendent Gary Hickerson informs the court that privacy screens are in use pursuant to the policy of the Cook County Department of Corrections ["CCDOC"], yet Counsel for Plaintiffs

1

still refuses to terminate the complaint for injunctive relief, knowing that the relief sought has already specifically been implemented without court involvement. The Court should therefore deny the requested relief, dismiss the claims involuntarily and award costs and fees to the defendants.

## II    EVEN IF THE COMPLAINT WAS NOT MOOTED, THERE STILL IS NO BASIS UNDER THE LAW FOR THE REQUESTED RELIEF

The Sheriff of Cook County and the County of Cook take their responsibilities for running and maintaining the CCDOC very seriously. Every effort is made to insure that the law is followed. The difficulty lies in efforts by some to attempt to win coveted attorneys fees by bringing lawsuit after lawsuit over the same issues. The plaintiffs in this case have requested injunctive relief. This occurs despite the fact that the *Duran* case, currently before Federal Judge Kendall and monitored by the Court Appointed John Howard Association represents continued Federal Court oversight of jail conditions at the CCDOC. In fact, *Duran* continues to control requests for injunctive relief regarding jail conditions and these matters more properly are addressed in the *Duran* case. However, despite this reality, Plaintiffs do not and cannot show they are entitled to relief.   Defendants rely on *Duran v. Elrod*, 542 F.2d 998 (7th Cir. 1976), and urge the court to follow Seventh Circuit precedent. It would be incorrect for a trial court to impose an injunction where the record does not show evidence that ordering an end to group strip searches (with or without screens) can be implemented without endangering institutional security or without requiring an unreasonable expenditure of funds. Nothing in the Plaintiffs' application touches on such evidence. It should be noted that the CCDOC authorities were already in the process of improving privacy in the jail and have since adopted policies specific to the Clothing Room in Division V.  In *Duran,* 542 F.2d at 1000-1001, the Court noted that the burden of proof as to the matters of "unreasonable expenditures" and "allocation of scarce financial resources" was on the plaintiffs. See *Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1978).

### PRELIMINARY INJUNCTION STANDARD

Rule 65 addresses Temporary Restraining Orders and Preliminary Injunctions. A "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Christian Legal Society*

*v. Walker*, 453 F.3d 853, 870 (7th Cir. 2006), quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997). To justify this relief, the movants must show that (1) they have a reasonable likelihood of success on the merits; (2) no adequate remedy at law exists; (3) they will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted; and (4) the injunction will not be inimical to the public interest, which includes the interests of any persons who are not parties to the case. *Christian Legal Society v. Walker*, 453 F.3d 853, 870 (7th Cir. 2006), citing *Joelner v. Vill. of Washington Park*, 378 F.3d 613, 620 (7th Cir. 2004), *Erickson v. Trinity Theatre, Inc.,* 13 F.3d 1061, 1067 (7th Cir. 1994); see also *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 11-12 (7th Cir.1992).

## FACTS

Plaintiff alleges that strip searches are improperly performed on detainees who have returned from courtrooms around the County. These strip searches are alleged to have occurred in the clothing room of Division V at the Cook County Department of Corrections prior to the return of detainees to their living units. It is alleged that the searches are done in a manner that violates their rights under the 4th and 14th Amendments, specifically because privacy screens in use in the RC/DC, and Divisions 1, 8 and 10 are not used in the clothing room of Division V.

From the Defendants' point of view, this suit is meritless and brought for improper purposes. Court return detainees are being returned from courtrooms all around the County where they have had an opportunity to have contact with persons from outside the secure setting of the jail. Even the Complaint paragraph 2 admits that the defendants have a right to conduct strip and cavity searches at the jail.

The Complaint challenges the manner in which searches are performed because they allege that such searches are performed in groups without privacy screens. As noted in the attached affidavit of Superintendent Gary Hickerson (Exhibit A), supervisor of Division V clothing room, the searches are in fact conducted with privacy screens (Exhibit A1), and have been since December 2007. The policy of the CCDOC is stated in the Divisional Standard Operating Procedure identified by Sup. Hickerson at paragraph II B (Exhibit A2). In addition, even without such screens, detainees are required to avoid looking around during the process, and are told to look only at the floor in front of them or at the wall when they are facing the wall as shown in the portions of the Deposition of Dan Brown quoted below (and Exhibit B).

3

The "application for temporary restraining order and/or preliminary injunction" attaches portions of the report of Frederic D. Moyer from the *Quentin Bullock* litigation. The "Application" admits that the waiting area of the clothing room of division V is an appropriate place to conduct strip searches because "procedures are in place to alert opposite gender staff was about to be conducted and keep them out of the area" and the area "is not a movement area and has a door that can be closed." [See page 6 of Application's exhibit "B"]. In addition, the Moyer report asserts that 45 men are strip searched, but are supervised by only 3 correctional staff.[1] Finally, Assistant Executive Director Dan Brown, whose affidavit was used in support of the application for preliminary injunction shows that partitions were employed within the last year (since February 2007). In addition, Dan Brown's deposition testimony on October 25, 2006 includes the following description of the strip search process, (although the place is different and the numbers are greater because it is the initial intake screening.)(Exhibit B)

Page 188

Q.    So how do the guards know that the person that stuck their tongue out, you know, actually did it, that everybody actually did -- ?

A.    They are watching their area and everybody is doing this in unison as it goes along. They want to get done with it. They normally listen. Sometimes we have problems, but normally they are going to listen and do what they have to do. They want to put their clothes back on. So we are going to finish the process. They are going to do that and, you know, it is done in unison.

Q. What kind of problems have you had to slow it down?

A. We have detainees that don't want to do it and that don't want to do what we ask them to do. They become a disciplinary issue.

Page 198-199

Q.    What happens if while the shoes are being searched, someone does turn around just to see what is going on?

A.    I don't have a problem with them turning around and looking, although we tell them to keep facing the wall. We can only give them instructions to do what we want them to do. You are talking if I got 45 men standing on the wall, these are men that are going to do what they want to do but they are – it is a controlled situation. So we have to give them very stern

---

[1] The implication that 3 staff members can abuse 45 detainees without being overpowered in a detainee riot is unreasonable.

4

instructions, stay on the wall, turn your head and face the wall. Because it is a safety issue for us. We are not going to allow them to do something that we don't want them to do. If they come off the wall, it is a whole different issue. We are going to instruct them to turn back around; you don't need to see what I'm doing. You know, basically that is it.

## ARGUMENT

Plaintiffs have failed to show how they are entitled to a preliminary injunction. Since the burden is on the Plaintiffs, they must put forth sufficient specific facts in an affidavit or verified complaint clearly showing likely success on the merits and that immediate and irreparable injury, loss, or damage will result to the movant. Plaintiffs have asked this court to issue an order relieving them of a strip search following a court appearance outside the secure setting of the jail. In addition, the motion is made even though the Rule 65 states: "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. . . ." For the following reasons the motion should be denied.

## AN ADEQUATE REMEDY AT LAW IS AVAILABLE

1) Injunctive relief generally is granted only if adequate remedy at law is unavailable. *Northern Cal. Power Agency v. Grace Geothermal Corp.*, 469 U.S. 1306, 1306, 105 S. Ct. 459, 83 L. Ed. 2d 388 (1984). The plaintiffs in this case are already members of the class certified in the case *Kim Young et al. v. County of Cook*, 06 CV 552. In that case, Judge Kennelly has certified a class of all detainees who were strip searched in a manner alleged to afford no privacy from other detainees using methods that are unreasonable and punitive. See *Young et al.* Doc 92 page 9 of 16. Therefore, Streeter and Bryant, who entered the CCDOC during the class period which began January 30, 2004, have an adequate remedy at law by virtue of being class members of the *Young* class. In every case in which the plaintiff wants a preliminary injunction he must show that he has "no adequate remedy at law," and (unless the statute under which he is suing excuses a showing of irreparable harm, as in *Illinois Bell Tel. Co. v. Illinois Commerce Comm'n*, supra, 740 F.2d at 571) that he will suffer "irreparable harm" if the preliminary injunction is not granted. The absence of an adequate remedy at law is a precondition to any form of equitable relief. Streeter and Bryant have an adequate remedy at law in the Young case.

5

## PLAINTIFF HAVE LESS THAN A NEGLIGIBLE CHANCE
## PREVAILING ON THE MERITS

2)      Besides showing that he has no adequate remedy at law and that he will suffer irreparable harm unless the preliminary injunction is granted, the plaintiff has another threshold to cross: that of showing some likelihood of succeeding on the merits. To determine whether a plaintiff has a likelihood of success on the merits, the court must assess whether the plaintiff has "a greater than negligible chance of winning . . . ." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002) (stating that "[a] party with no chance of success on the merits cannot attain a preliminary injunction"). The Plaintiffs likelihood of success on the merits is minimal. Despite the allegations of Constitutional violations, there is no appellate case standing for the proposition that court returns may not be strip searched. There are no reported decisions stating that group strip searches are unconstitutional. In fact the case law relied on by the plaintiffs is irrelevant to those inquiries.

Because the standards applicable to pretrial detainees and prisoners are the same following *Hart v. Sheahan*, 396 F.3d 887 at 893 (7th Circuit 2004) the court should have followed the 7th Circuit precedent in *Peckham v. Wisconsin Dept. of Corrections*, 141 F.3d 694 (7th Circuit 1998) where it upheld strip searches when a new prisoner arrived at the jail or returned to jail from a doctor's visit or from court. The correct standard is the not the 4th Amendment but the 14th amendment, which requires an evaluation of whether the act in question "shocks the conscience". "Our cases thus establish that the protections of the Fourth Amendment apply at arrest and through the Gerstein probable cause hearing, due process principles govern a pretrial detainee's conditions of confinement after the judicial determination of probable cause, and the Eighth Amendment applies following conviction." *Lopez v. City of Chicago*, 464 F.3d 711, 719 (7th Cir. 2006).

Plaintiffs also fail to show that the alleged injury is irreparable to warrant injunctive relief. It is not at all clear that plaintiff is entitled to any relief because it is not well settled that the Constitution is violated by conducting strip searches without privacy screens. Strip searches are permissible so long as they are motivated by legitimate penological concerns and performed in a reasonable manner. *Peckham v. Wisc Dept of Corr.,* 141 F.3d 694 697 (7th Cir. 1998). In addition, the Seventh Circuit has warned that jail management is not and should not be the focus of a Federal Court.

> Federal judges must always be circumspect in imposing their ideas about civilized and effective prison administration on state prison officials. See *Block v. Rutherford*, 468 U.S. 576, 104 S. Ct. 3227, 3232, 82 L. Ed. 2d 438 (1984); *Procunier v. Martinez*, 416 U.S. 396, 404-05, 40 L. Ed. 2d 224, 94 S. Ct. 1800 (1974); *Rhodes v. Chapman*, 452 U.S. 337, 351 n. 16, 69 L. Ed. 2d 59, 101 S. Ct. 2392 (1981). The Constitution does not speak with precision to the issue of prison conditions (that is an understatement); federal judges know little about the management of prisons; managerial judgments generally are the province of other branches of government than the judicial; and it is unseemly for federal courts to tell a state or city or, as here, a county how to run its prison system. Of course the County agreed to a consent decree which severely limits its freedom of action, but the County is not the state. Federal courts must be wary of entanglement in the intramural struggles of state or local government. *Duran v. Elrod*, 760 F.2d 756, 759 (7th Cir. 1985).

Counsel for the Plaintiffs himself, has no reason to believe that the likelihood of success is great. Mr. Morrissey and Mr. Farley raised the very same issue before Judge Bucklo in the Bullock case now pending. There the plaintiffs made the following four claims in their motion for summary judgment [which are identical to the issues raised now]:

1. The strip searching of all male court discharges and not all female court discharges violates the Equal Protection Clause.

2. The strip searching of all male court discharges in large non private group settings with up to fifty inmates while the female court discharges, who opt to return to the housing divisions, are afforded privacy violates the Equal Protection Clause.

3. The strip searching of all male court discharges not based upon reasonable suspicion that they are concealing contraband violates the Fourth Amendment.

4. Assuming arguendo, the Defendants are entitled to strip search all male court discharges, the manner in which the strip search is conducted, in large non private group settings violates the Fourth Amendment. *Bullock v. Sheahan*, 519 F. Supp. 2d 763, 764 (D. Ill. 2007)

The summary judgment in that case is still in the briefing stage and may not be decided for several months. The main difference between *Bullock* and this case is that *Bullock* involves persons who were ordered released, while Streeter and Bryant are returning to a jail cell, therefore Plaintiffs here have even less of a chance of prevailing on the theory of improper group searches.

In addition, State law mandates the very thing Plaintiffs seek to prevent: "Detainees permitted to leave the confines of the jail temporarily, for any reason, shall be thoroughly searched prior to leaving and before re-entering the jail." 20 Ill. Adm. Code 701.140 (a) (Exhibit

7

C). The words from the County Jails Act (a statute of the State of Illinois) "for any reason" include going to and from courtrooms.

Plaintiffs allege that they were subjected to group strip searches which are improper. This allegation does not mean likely success. In *Adams v. County of Sacremento*, the Plaintiff raised various claims concerning conditions while he was held at the Sacramento County Main Jail. On January 19, 2007, plaintiff filed a motion for summary judgment only as to his claims that he was allegedly subjected to five unlawful group strip searches[2]. The court denied plaintiff's motion for summary judgment on liability. *Adams v. County of Sacremento*, 2007 U.S. Dist. LEXIS 15666, 7-8 (D. Cal. 2007).

Based on the same reasoning, the district court in *Black v. Franklin County*, 2005 U.S. Dist. LEXIS 26362, 2005 WL 1993445 (E.D. Ky. August 16, 2005), dismissed the claims of inmates and/or pretrial detainees who were strip searched after returning to jail from work release or from court appearances finding that those searches did not violate the plaintiffs' constitutional rights. *Sutton v. Hopkins County*, 2007 U.S. Dist. LEXIS 3150 (D. Ky. 2007).

Recently, the Eleventh Circuit sitting en banc in a jail strip search case observed: "Most of us [meaning judges] are uncertain that jailers are required to have a reasonable suspicion of weapons or contraband before strip searching -- for security and safety purposes -- arrestees bound for the general jail population . . . . <u>Never has the Supreme Court imposed such a requirement</u>. See *Bell v. Wolfish*, 441 U.S. 520, 559-60, 99 S. Ct. 1861, 1884-1885, 60 L. Ed. 2d 447 (1979) (rejecting claim that strip search policy at a federal jail for mostly pretrial detainees violated the Fourth Amendment per se) *Evans v. Stephens*, 407 F.3d 1272, 1278-1279 (11th Cir. 2005) [emphasis supplied].

The *Bell* court applied a balancing test between the limited privacy interests of detainees and the safety and security concerns of the jail. In striking the balance, the Court weighed "the privacy interests of the inmates," Id. at 560, 99 S. Ct. at 1885—"the scope of the particular

---

[2] Adams alleged that from June 17, 2002 to about March 10, 2003, he was subjected to unlawful group strip searches on five different occasions. (Pl.'s Mot. at 2.) The first search was on June 17, 2002, at booking, in a "group setting of other detainees." (Id., Pl.'s Decl. at 1.) The second and third strip searches occurred between July and December 2002, "following a fight between two other detainees." (Id.) Plaintiff contends he was not a party to the fight, but that all remaining detainees were searched after the offending detainees were removed. (Id.) The fourth search was in December 2002, following visit with plaintiff's counsel. (Id.) Plaintiff was the only one strip searched on this occasion, but his search was witnessed by other detainees and staff. (Id.) The fifth time, plaintiff was strip searched in a group of other detainees returning from federal court. (Id., Pl.'s Decl. at 2.)

intrusion, the manner in which it is conducted, . . . and the place in which it is conducted," against "the significant and legitimate security interests of the institution," Id. at 560, 99 S. Ct. at 1884-1885. In the end, the *Bell* Court concluded that those security interests of the detention facility outweighed the privacy interests of the pretrial detainees.

Even the case cited by Plaintiffs, *Mary Beth G.* makes the following observation: "Although the majority in *Wolfish* did uphold the strip searches conducted there on less than probable cause, the detainees were awaiting trial on *serious federal charges* after having failed to make bond and were being searched after contact visits." *Mary Beth G. v. Chicago*, 723 F.2d 1263, 1272 (7th Cir. 1983)[emphasis supplied]. The *Mary Beth G.* decision was intended to dispel the argument that searches incident to arrest by police could not be justified based on a possibility that the women would be later incarcerated in a jail. In the case before this court, the Plaintiffs are charged with serious felonies and have returned from contact visits. In other words they are already in custody with an opportunity to receive contraband and weapons, and this post court appearance search is no longer a search incident to arrest.

### A COURT ALSO MUST BALANCE THE HARDSHIPS THE DEFENDANT WOULD SUFFER IF INJUNCTIVE RELIEF IS GRANTED, AND THAT BALANCE FAVORS THE CCDOC

3) A court reviewing an application for preliminary relief balances hardship faced by applicant for injunction against hardship defendant would suffer if relief were granted. In this case, there is no fact showing that plaintiff will suffer any hardship beyond the assumed indignity of being strip searched. Plaintiffs' concern about the indignity of a strip search in an attempt to avoid strip searches in general, place all other detainees as well as the Correctional staff at risk. There is no doubt that the Cook County Jail can be dangerous. Judge Posner went to great lengths in *Holly v. Woolfolk* to describe just how dangerous a place is the Cook County Department of Corrections, see *Holly v. Woolfolk*, 415 F.3d 678, 679 (7th Cir. 2005). The court must also consider the safety and general welfare of non-parties where it is potentially harmed by a grant of injunctive relief. *Ward v. Walsh*, 1 F.3d 873, 879-80 (9th Cir. 1993). By ordering the cessation of certain strip searches, the Court would affect the safety of persons in the jail, both other detainees and employees. Certainly the public has an interest in not permitting such other persons be placed at risk at risk due to a hypothetical privacy interest, especially when the

Sheriff is already mindful of such concerns by providing policies and privacy screens. The court can deny injunctive relief on public policy grounds as well.

## EQUITABLE PRINCIPLES FAVOR THE DEFENDANTS

4)	Finally, equitable principles affect court's power to grant injunctive relief. The "Clean Hands Doctrine" bars his request for injunctive relief. As a matter of public record, Charles Streeter #K80806, was indicted by a grand jury charging him a violation of 720 ILCS 5/24 -1.7(A), known as the Armed Habitual Criminal Statute. It is difficult to find a person more probably disposed to bringing a weapon into a jail if he knows a federal judge has ordered he not be searched. As a matter of public record, Keith Bryant #B30658 is on parole from the Illinois Department of Corrections for recent felony convictions. It is also probable that a parolee who is indicted on a criminal offense within a week and a half of being paroled, is likely to attempt to bring a weapon into a jail if he knows a federal court has ordered he not be searched.(Paroled 2/22/07). If as Plaintiffs' counsel insists, the standard is a 4th Amendment standard, then these facts of the background and propensity of the plaintiffs themselves is relevant to the equation. The "totality of the circumstances" test necessarily includes the experience of the law enforcement agent and the behavior and characteristics of the subject. *United States v. Odum,* 72 F.3d 1279, 1284 (7th Cir. 1995) and *United States v. Zambrana*, 428 F.3d 670, 675 (7th Cir. 2005).   In a recent case, the Supreme Court reviewed a situation where Sheriffs executed a search warrant on a home where the persons who were subject of the warrant no longer resided. The Sheriffs required the current occupants to stand naked for a time. The Court held "The Fourth Amendment allows warrants to issue on probable cause, a standard well short of absolute certainty. Valid warrants will issue to search the innocent, and people like Rettele and Sadler unfortunately bear the cost. Officers executing search warrants on occasion enter a house when residents are engaged in private activity; and the resulting frustration, embarrassment, and humiliation may be real, as was true here. When officers execute a valid warrant and act in a reasonable manner to protect themselves from harm, however, the Fourth Amendment is not violated." *L.A. County v. Rettele*, 127 S. Ct. 1989, 1993-1994 (U.S. 2007). In the case here, the plaintiffs has been admittedly held in custody after a probable cause determination and the motivation of the CCDOC in conducting strip searches is the protection of both detainees and staff employed at the jail. This is not a 4th Amendment violation. There is no real likelihood of success on the part of the plaintiffs.

In sum, courts will review several equitable factors, including: (1) Movant's likelihood of success; (2) Likelihood that movant will suffer irreparable injury if the request for preliminary injunction is denied; (3) Balance of hardships between the parties and coupled against hardship faced by non-parties; and (4) Effect of grant or denial of preliminary injunctive relief on public policy. When this court applies these factors, it is clear that plaintiffs have barely a theoretical claim with no likelihood of success, they have not shown irreparable injury will result in the preliminary injunction were denied, the hardship likely to be suffered by those others in the jail who also depend on the security provided by the CCDOC if some proven violent persons escape close searching is great even when balanced against the plaintiffs privacy interests and the granting of the injunctive relief will have a grave effect on public policy of providing a safe county jail. These factors weigh in favor of the CCDOC and temporary injunctive relief should be denied.

## DEFENDANTS MOVE FOR DISMISSAL OF THE COMPLAINT PURSUANT TO RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM

5)   Plaintiffs fail to state a claim for relief. Defendants incorporate their argument from section 2 above and argue that the complaint should be dismissed for those stated reasons. Plaintiffs suggest that they suffer a violation of the 4th Amendment and the 14th Amendment in that they are searched in a group without privacy screens in place. Defendants have offered facts showing that there is a legitimate, identifiable purpose for strip searches of court returns, to wit: Superintendent Gary Hickerson avers that contraband is recovered on these searches [see affidavit Paragraph 9].

## CASE CITATIONS IN PLAINTIFFS' APPLICATION ARE MISLEADING AND SHOULD BE DISREGARDED

Plaintiffs incorrectly cite to cases from other districts; misrepresenting their value as precedent and mischaracterizing their holdings. For example plaintiff says "[Whether the strip search was conducted in private] is especially relevant in determining whether a strip search is reasonable under the circumstances." [Citing a case from the 4th Circuit.]

The complete paragraph is:

> Furthermore, we cannot ascertain from the record whether the facts and issues in Polk and Smith are identical. The Smith case was decided on the basis of stipulated facts. No factual findings have been made in the Polk case. In Smith, for example, the named plaintiff was strip searched in the presence of another

11

> female detainee. *Smith v. Montgomery County*, 547 F. Supp. At 594. The strip search of Polk may or may not have been conducted in private. This fact is especially relevant in determining whether a strip search is reasonable under the circumstances. See *Bell v. Wolfish*, 441 U.S. 520, 60 L. Ed. 2d 447, 99 S. Ct. 1861 (1979) (each case requires a balancing of the need for the search against the invasion of the personal rights that the search entails); see also *Logan v. Shealy*, 660 F.2d 1007 (4th Cir. 1981) (indiscriminate strip search policy cannot be justified simply because of administrative ease). Thus, on the basis of this record, we cannot ascertain whether the issues in the prior litigation are identical with the issues sought to be *estopped*. *Polk v. Montgomery County*, 782 F.2d 1196, 1201-1202 (4th Cir. 1986).

In short this passage Plaintiffs misquote the reason it was written by suggesting it rests on whether a strip search was conducted "in public". Plaintiffs want the court to believe that their searches are conducted "in public", but even the Moyer Report describes the room as appropriate because extraneous traffic is controlled (there is one entrance to the waiting room). The *Polk* case merely disallows *Estoppel* as a basis for denying the County's argument for summary judgment: the facts could not be said to be identical. In *Polk*, the plaintiff who opted out of a class could not use the same class action as *estoppel*.

In addition, plaintiff's reference to the *Logan* decision, also from the 4th Circuit decided in 1981, is misrepresented. Logan was a temporary detainee who had been subjected to "an indiscriminate strip search policy routinely applied to detainees such as Logan along with all other detainees [and] could not be constitutionally justified simply on the basis of administrative ease in attending to security considerations" *Logan v. Shealy*, 660 F.2d 1007, 1013 (4th Cir. 1981). It is the plaintiffs' position that they, serious felony offenders are to be treated the same as those who are traffic offenders. This is simply not the law.

Citing *Del Raine* plaintiffs suggest that the case was decided in a manner in favor of the plaintiff. In reality, this is not what occurred. The district and appellate courts properly applied 8th and 14th amendment standards in determining that the strip search claim was <u>properly dismissed on the defendants' motion for directed finding</u>. Therefore the case actually supports the defendants' position that the TRO should be denied. The complete cite is as follows.

> With respect to plaintiff's claim that she is regularly forced to strip before guards and other inmates, it should be noted that while a prisoner's expectation of privacy is extremely limited in light of the overriding need to maintain institutional order and security, see *Bell v. Wolfish*, 441 U.S. 520, 537, 558-60, 99 S. Ct. 1861, 1873 1884-85, 60 L. Ed. 2d 447, the Supreme Court has recognized that a prisoner retains a remedy for "calculated harassment unrelated to prison

> needs." *Hudson v. Palmer*, 468 U.S. 517, 530, 104 S. Ct. 3194, 3202, 82 L. Ed. 2d 393. The Eighth Amendment's prohibition against cruel and unusual punishment stands as a protection from bodily searches which are maliciously motivated, unrelated to institutional security, and hence "totally without penological justification." *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59; see *Hudson,* 468 U.S. at 530, 104 S. Ct. at 3202, *Smith v. Chrans*, 629 F. Supp. 606, 610-11 (C.D. Ill.1986). *Id.*
>
> This court has some mild reservations over the fact that the search of this appellant was not conducted in a private examination room instead of the "lobby area." However, in outlining the facts, the district court portrays a situation fraught with decisions made "in haste, under pressure, and frequently without the luxury of a second chance." *Whitley v. Albers*, 475 U.S. 312, 89 L. Ed. 2d 251, 106 S. Ct. 1078 (1986). <u>There is no evidence of any defendant-appellees taking this course of action in a "malicious[] and sadistic[] fashion for the very purpose of causing harm.</u>" Id. at 320-21. This court also notes that there are countervailing pressures upon prison officials conducting such searches. This court finds no evidence of "calculated harassment unrelated to prison needs." Id. n6 *Del Raine v. Williford*, 32 F.3d 1024, 1040 (7th Cir. 1994)

In continuing to cite to cases such as *Mary Beth G.* plaintiffs show a lack of understanding that the plaintiffs are not similar to the plaintiff in that case. They are not arrestees, or female, or charged with minor infractions, or awaiting the immediate posting of bond. They are felons, one of whom is on parole and the other who is charged with the offence of being an Armed Habitual Criminal. Both these facts lend to a pressing need to conduct "random, unannounced, irregularly scheduled shakedowns of detainees and their quarters shall be made to detect the presence of weapons and other contraband" as is required by 20 Ill. Adm. Code 701.140 (c) 12.(Exhibit C).

## CONCLUSION

An injunction is an equitable remedy that does not issue as a matter of course, but rather a remedy which courts may grant in their discretion in the extraordinary situations where legal remedies such as monetary damages are inadequate. See, e.g., *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-12, 72 L. Ed. 2d 91, 102 S. Ct. 1798 (1982); *City of Harrisonville v. W.S. Dickey Clay Mfg. Co.,* 289 U.S. 334, 337-38, 77 L. Ed. 1208, 53 S. Ct. 602 (1933). In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction. *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 500 (1941). Thus, the award of an injunction by courts of equity has never been regarded as strictly a matter of right, even though irreparable injury may otherwise result to the plaintiff. Where a requested injunction adversely affects a public interest the impairment of which an

injunction bond cannot compensate, the court may in the public interest withhold relief until a final determination of the rights of the parties. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-313 (U.S. 1982). The Plaintiffs' "verified" application is insufficient in light of the affidavit of Superintendent Gary Hickerson (Exhibit A), the photographic evidence (Exhibit A1) and the policy statement requiring the use of privacy screens (Exhibit A2) to sustain the preliminary injunction. In addition, such evidence shows the Plaintiffs cannot prevail on the complaint for permanent injunction and the claim should be dismissed. Even without the evidence that privacy screens are in use, the plaintiffs fail to state a cause of action because they are detainees held on serious felony charges who can be strip searched upon return from Court as mandated by state law and authorized by *Bell v. Wolfish*.

**WHEREFORE,** defendants Thomas Dart, SHERIFF OF COOK COUNTY and County of Cook, pray that this Honorable Court deny Plaintiffs' application for Preliminary Injunction, Dismiss the Complaint for Injunctive Relief and order the Plaintiffs to pay costs and attorneys fees for the defense of these matters.

                              Respectfully Submitted,
                              RICHARD A. DEVINE
                              State's Attorney of Cook County

By:    s/Francis J. Catania
          Francis J. Catania
          Assistant State's Attorney

ASA Francis J. Catania ARDC#6203188
Cook County State's Attorney's Office
Richard J. Daley Center
50 W. Washington Street Room 500
Chicago, Illinois 60602
(312) 603-6572