IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Charles Streeter and Keith Bryant individually and on behalf of a class, ) ) ) Plaintiffs, ) ) No. 08 C 732 vs. ) ) Judge Ruben Castillo SHERIFF OF COOK COUNTY, ) Magistrate Cole And COOK COUNTY ILLINOIS ) ) Defendants. ) | |

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR INJUNCTIVE RELIEF**

**NOW COME the Defendants, Thomas Dart, Sheriff of Cook County and County of Cook**, by their attorney, RICHARD A. DEVINE, State's Attorney of Cook County, and through his assistant, Francis J. Catania, and pursuant to F.R.C.P. Rule 12(b)(6), move this court to dismiss the Complaint for failure to state a claim upon which relief may be granted. In support thereof Defendant states as follows:

The complaint for injunctive relief should be dismissed because the Plaintiffs plead themselves out of court where they admit the Sheriff has is a legitimate penological basis for conducting strip searches on persons detained in the Cook County Department of Corrections following court appearances [*see* Complaint paragraph 2].

## FACTS

Plaintiff alleges that strip searches are improperly performed on detainees who have returned from courtrooms around the County. These strip searches are alleged to have occurred in the clothing room of Division V at the Cook County Department of Corrections prior to the return of detainees to their living units. It is alleged that the searches are done in a manner that

1

violates their rights under the 4th **and** 14th Amendments, specifically because privacy screens in use in the RC/DC, and Divisions 1, 8 and 10 are not used in the clothing room of Division V (emphasis supplied).

The Complaint challenges the manner in which searches are performed because they allege that such searches are performed in groups and without the privacy screens. Plaintiffs in this case have requested injunctive relief. Defendants presume Plaintiffs are requesting an order from the Court to the effect that strip searches are not to be conducted on them or that the Court order privacy screens to be used. Since the complaint is styled as a class action, plaintiffs also request relief for a class of similarly situated persons.

## NO LEGITIMATE BASIS EXISTS FOR THE REQUESTED RELIEF

The Sheriff of Cook County and the County of Cook take their responsibilities for running and maintaining the CCDOC very seriously. Every effort is made to insure that the law is followed. The difficulty of this pursuit lies in efforts by some to win attorneys fees by bringing lawsuit after lawsuit raising the same or nearly the same issues with no desire to right a wrong[1].

The plaintiffs in this case have requested injunctive relief. This request is made despite the fact that the *Duran* case, currently before Federal Judge Kendall and monitored by the court appointed watchdog John Howard Association represents continued Federal Court oversight of jail conditions at the CCDOC. In fact, *Duran* continues to control requests for injunctive relief regarding jail conditions and these matters more properly are addressed in the *Duran* case. However, despite this reality, Plaintiffs do not and cannot show they are entitled to relief. Among other cases, Defendants rely on *Duran v. Elrod*, 542 F.2d 998 (7th Cir. 1976), and urge the court to follow Seventh Circuit precedent. It would be incorrect for a trial court to impose an

---

[1] A non-exhaustive list of cases filed by Mr. Morrissey raising facets of nearly the same issue include: 96 C 7294 Gary v. Sheahan; 01 C 1592 Wilkes v. Sheahan; 03 C 5309 Davis v. Sheahan; 04 C 1051 Bullock v. Sheahan; 06 C 493 Jackson v. Sheahan; 07 C 887 Martin v. Sheahan; 07 C 2391 Domina v. Sheahan; 07 C 2393 Harper v. Dart

2

injunction where the complaint does not group strip searches (with or without screens) can be implemented without endangering institutional security or without requiring an unreasonable expenditure of funds. Nothing in the Plaintiffs' complaint application touches on such evidence. It should be noted that at the time of this complaint the CCDOC authorities were already in the process of improving privacy in the jail and have since adopted policies specific to the Clothing Room in Division V, including use of privacy screens. In *Duran,* 542 F.2d at 1000-1001, the Court noted that the burden of proof as to the matters of "unreasonable expenditures" and "allocation of scarce financial resources" was on the plaintiffs. See *Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1978).

## ARGUMENT

Plaintiffs have failed to state a claim upon which relief may be granted. Rule 8(a) of the Federal Rules of Civil Procedure requires a plaintiff to plead enough factual matter to show his claim is plausible. Plaintiffs have no alleged facts showing the basis for relief. A plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (U.S. 2007).* Plaintiffs have pleaded a barely speculative cause of action. The issue raised by the suit is whether strip-searching in jails is constitutionally improper where it is not conducted utilizing privacy screens. This is not a new issue, but has been raised time and again, but usually from the more firm foundation of searches by police, incident to the arrest. It is a fallacy to equate a search incident to arrest, which is founded only upon the discretion of a police officer, with the safety and security search inside a jail. This difference is not a minor one. As Mr. Morrissey knows, the search prior to entry into

the secure setting of the Cook County Department of Corrections occurs only after there has been a **judicial** determination of probable cause to detain and a bond set. This procedure, mandated by *Gerstein v. Pugh, 420 U.S. 103, 121 (U.S. 1975),* is followed by a court order to detain issued by a judge who mandates the accused be held in custody until his trial, subject to the posting of bond.

## AN ADEQUATE REMEDY AT LAW IS AVAILABLE

Injunctive relief generally is granted only if adequate remedy at law is unavailable. *Northern Cal. Power Agency v. Grace Geothermal Corp.*, 469 U.S. 1306, 1306, 105 S. Ct. 459, 83 L. Ed. 2d 388 (1984). The plaintiffs in this case are already members of the class certified in the case *Kim Young et al. v. County of Cook*, 06 CV 552. In that case, Judge Kennelly has certified a class of all detainees who were strip searched in a manner alleged to afford no privacy from other detainees using methods that are unreasonable and punitive. [See *Young et al.* Doc 92 page 9 of 16.] Therefore, Streeter and Bryant, who entered the CCDOC during the class period, which began January 30, 2004, have an adequate remedy at law by virtue of being class members of the *Young* class. In every case in which the plaintiff wants a preliminary injunction he must show that he has "no adequate remedy at law," and (unless the statute under which he is suing excuses a showing of irreparable harm, as in *Illinois Bell Tel. Co. v. Illinois Commerce Comm'n*, supra, 740 F.2d at 571) that he will suffer "irreparable harm" if the preliminary injunction is not granted. The absence of an adequate remedy at law is a precondition to any form of equitable relief. Streeter and Bryant have an adequate remedy at law in the Young case. The members of the class they seek to represent have not opted out of the Young litigation, therefore they remain plaintiffs in the Young litigation and consequently cannot be represented by Streeter and Bryant on the same class issues raised in Young and Bullock and Harper.

## PLAINTIFF HAVE LESS THAN A THEORETICAL CHANCE
## PREVAILING ON THE MERITS

Because the Constitutional standards applicable to pretrial detainees and prisoners are the same following *Hart v. Sheahan*, 396 F.3d 887 at 893 (7th Circuit 2004) the court should follow the 7th Circuit precedent in *Peckham v. Wisconsin Dept. of Corrections*, 141 F.3d 694 (7th Circuit 1998) where it upheld strip searches when a new prisoner arrived at the jail <u>or returned to jail from a doctor's visit or from court</u>. The correct standard is the not the 4th Amendment but the 14th amendment, which requires an evaluation of whether the act in question "shocks the conscience". "Our cases thus establish that the protections of the Fourth Amendment apply at arrest and through the *Gerstein* probable cause hearing, due process principles govern a pretrial detainee's conditions of confinement after the judicial determination of probable cause, and the Eighth Amendment applies following conviction." *Lopez v. City of Chicago*, 464 F.3d 711, 719 (7th Cir. 2006).

Plaintiffs also fail to plead any facts to warrant injunctive relief because they don't and cannot say that any alleged injury is irreparable. It is not clear that plaintiffs are entitled to any relief at all because it is not "well settled" that the Constitution is violated by conducting jail strip searches without privacy screens. Strip searches are permissible so long as they are motivated by legitimate penological concerns and performed in a reasonable manner. *Peckham v. Wisc Dept of Corr.,* 141 F.3d 694 697 (7th Cir. 1998). In addition, the Seventh Circuit has warned that jail management is not and should not be the focus of a Federal Court.

> Federal judges must always be circumspect in imposing their ideas about civilized and effective prison administration on state prison officials. See *Block v. Rutherford*, 468 U.S. 576, 104 S. Ct. 3227, 3232, 82 L. Ed. 2d 438 (1984); *Procunier v. Martinez*, 416 U.S. 396, 404-05, 40 L. Ed. 2d 224, 94 S. Ct. 1800 (1974); *Rhodes v. Chapman*, 452 U.S. 337, 351 n. 16, 69 L. Ed. 2d 59, 101 S. Ct. 2392 (1981). The Constitution does not speak with precision to the issue of prison conditions (that is an understatement); federal judges know little about the management of prisons;

managerial judgments generally are the province of other branches of government than the judicial; and it is unseemly for federal courts to tell a state or city or, as here, a county how to run its prison system. Of course the County agreed to a consent decree which severely limits its freedom of action, but the County is not the state. Federal courts must be wary of entanglement in the intramural struggles of state or local government. *Duran v. Elrod*, 760 F.2d 756, 759 (7th Cir. 1985).

Counsel for the Plaintiffs himself, has no reason to believe that the likelihood of success is great. Mr. Morrissey and Mr. Farley raised the very same issue before Judge Bucklo in the *Bullock* case now pending. There the plaintiffs made the following four claims in their motion for summary judgment [which are identical to the issues raised now]:

1. The strip searching of all male court discharges and not all female court discharges violates the Equal Protection Clause.

2. The strip searching of all male court **discharges in large non private group settings** with up to fifty inmates while the female court discharges, who opt to return to the housing divisions, are afforded privacy violates the Equal Protection Clause.

3. The strip searching of all male court discharges not based upon reasonable suspicion that they are concealing contraband violates the Fourth Amendment.

4. Assuming, arguendo, the Defendants are entitled to strip search all male court discharges, the manner in which the strip search is conducted, in large non private group settings violates the Fourth Amendment. *Bullock v. Sheahan*, 519 F. Supp. 2d 763, 764 (D. Ill. 2007)

The summary judgment in that case is still in the briefing stage and may not be decided for several months. The main difference between *Bullock* and this case is that *Bullock* involves persons who were presumptively released from custody, while Streeter and Bryant are returning to a jail cell. The plaintiffs in Bullock complaint about strip searching where they have been conditionally released already. Plaintiffs here are not released, but are re-entering the secured setting of the jail. They have even less of a chance of prevailing on the theory of improper group searches than the *Bullock* plaintiffs.

6

In addition, the statutes of Illinois mandate strip searches of detainees, the very thing Plaintiffs seek to prevent: "Detainees permitted to leave the confines of the jail temporarily, for any reason, shall be thoroughly searched prior to leaving and before re-entering the jail." 20 Ill. Adm. Code 701.140 (a). The words from the County Jails Act (a statute of the State of Illinois) "for any reason" must include going to and from courtrooms.

Plaintiffs allege that they were subjected to group strip searches which they claim are improper. This allegation does not mean likely success. In *Adams v. County of Sacremento*, the Plaintiff raised various claims concerning conditions while he was held at the Sacramento County Main Jail. On January 19, 2007, plaintiff filed a motion for summary judgment only as to his claims that he was allegedly subjected to five unlawful group strip searches[2]. The court denied plaintiff's motion for summary judgment on liability. *Adams v. County of Sacramento*, 2007 U.S. Dist. LEXIS 15666, 7-8 (D. Cal. 2007).

Based on similar reasoning, the district court in *Black v. Franklin County*, 2005 U.S. Dist. LEXIS 26362, 2005 WL 1993445 (E.D. Ky. August 16, 2005), dismised the claims of inmates and/or pretrial detainees who were strip searched after returning to jail from work release or from court appearances finding that those searches did not violate the plaintiffs' constitutional rights. *Sutton v. Hopkins County*, 2007 U.S. Dist. LEXIS 3150 (D. Ky. 2007).

Recently, the Eleventh Circuit sitting en banc in a jail strip search case observed: "Most of us [meaning judges] are uncertain that jailers are required to have a reasonable suspicion of

---

[2] Adams alleged that from June 17, 2002 to about March 10, 2003, he was subjected to unlawful group strip searches on five different occasions. (Pl.'s Mot. at 2.) The first search was on June 17, 2002, at booking, in a "group setting of other detainees." (Id., Pl.'s Decl. at 1.) The second and third strip searches occurred between July and December 2002, "following a fight between two other detainees." (Id.) Plaintiff contends he was not a party to the fight, but that all remaining detainees were searched after the offending detainees were removed. (Id.) The fourth search was in December 2002, following visit with plaintiff's counsel. (Id.) Plaintiff was the only one strip searched on this occasion, but his search was witnessed by other detainees and staff. (Id.) The fifth time, plaintiff was strip searched in a group of other detainees returning from federal court. (Id., Pl.'s Decl. at 2.)

weapons or contraband before strip searching -- for security and safety purposes -- arrestees bound for the general jail population . . . . <u>Never has the Supreme Court imposed such a requirement</u>. See *Bell v. Wolfish,* 441 U.S. 520, 559-60, 99 S. Ct. 1861, 1884-1885, 60 L. Ed. 2d 447 (1979) (rejecting claim that strip search policy at a federal jail for mostly pretrial detainees violated the Fourth Amendment *per se*) *Evans v. Stephens*, 407 F.3d 1272, 1278-1279 (11th Cir. 2005) [emphasis supplied].

The *Bell* court applied a balancing test between the limited privacy interests of detainees and the safety and security concerns of the jail. In striking the balance, the Court weighed "the privacy interests of the inmates," Id. at 560, 99 S. Ct. at 1885—"the scope of the particular intrusion, the manner in which it is conducted, . . . and the place in which it is conducted," against "the significant and legitimate security interests of the institution," Id. at 560, 99 S. Ct. at 1884-1885. In the end, the *Bell* Court concluded that those security interests of the detention facility outweighed the privacy interests of the pretrial detainees.

Even the case cited by Plaintiffs, *Mary Beth G.* makes the following observation: "Although the majority in *Wolfish* did uphold the strip searches conducted there on less than probable cause, the detainees were awaiting trial on *serious federal charges* after having failed to make bond and were being searched after contact visits." *Mary Beth G. v. Chicago*, 723 F.2d 1263, 1272 (7th Cir. 1983) [emphasis supplied]. The *Mary Beth G.* decision was intended to dispel the argument that searches incident to arrest by police could not be justified based on a possibility that the women would be later incarcerated in a jail.

In the case before this court, the Plaintiffs are charged with serious felonies and have returned from contact visits. In other words they are already in custody with an opportunity to

receive contraband and weapons, and this post court appearance search is no longer a search incident to arrest.

Although the Seventh Circuit has not specifically addressed the issue of whether group strip searches are unreasonable under the analysis of *Bell*, and its progeny, there has been a considerable jurisprudence on the deference given to jailors on just how to run the jail.

### BALANCING THE HARDSHIPS, DEFENDANT, COURT STAFF, OTHER DETAINEES, AND THE PUBLIC IN GENERAL WOULD BE INJURED IF THE REQUESTED INJUNCTIVE RELIEF IS GRANTED

In this case, there is no allegation that plaintiffs will suffer any hardship beyond an assumed indignity of being strip searched. Plaintiffs' alleged concern about the indignity of a strip search is a veiled attempt to avoid strip searches in general. This avoidance of a necessary penological tool against introduction of weapons and contraband into a jail, places all other detainees as well as the Correctional staff at risk. There is no doubt that the Cook County Jail can be dangerous. Judge Posner went to great lengths in *Holly v. Woolfolk* to describe just how dangerous a place the Cook County Department of Corrections can be, see *Holly v. Woolfolk*, 415 F.3d 678, 679 (7th Cir. 2005).

In balancing the hardships, a court must also consider the safety and general welfare of non-parties where it is potentially harmed by a grant of injunctive relief. *Ward v. Walsh*, 1 F.3d 873, 879-80 (9th Cir. 1993). By ordering the cessation of certain strip searches, the Court would affect the safety of **all** persons in the jail, both other detainees and employees. Certainly the public has an interest in not permitting such other persons be placed at risk at risk due to a hypothetical privacy interest, especially when the Sheriff is already mindful of such concerns by providing policies and privacy screens. The court can deny injunctive relief on public policy grounds as well.

9

**EQUITABLE PRINCIPLES FAVOR THE DEFENDANTS**

The equitable remedy of injunctive relief is unavailable absent a showing of irreparable injury. This requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged. In the words of the Supreme Court a "likelihood of substantial and immediate irreparable injury" is a prerequisite. Like the plaintiff in *City of Los Angeles*, the speculative nature of Plaintiffs' claims of future injury mandates this court find that Plaintiffs have not pleaded and cannot show that the prerequisite of equitable relief known as "irreparable injury" will occur. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (U.S. 1983). Therefore, equitable principles affect court's power to grant such injunctive relief.

Additional equitable principals apply as well. The "Clean Hands Doctrine" bars plaintiffs' request for injunctive relief. As a matter of public record, plaintiff Charles Streeter #K80806, was indicted by a grand jury charging him a violation of 720 ILCS 5/24 -1.7(A), known as the Armed Habitual Criminal Statute. It is difficult to find a person more probably disposed to bringing a weapon into a jail, if he knows a federal judge has ordered he not be searched. As a matter of public record, plaintiff Keith Bryant #B30658 is on parole from the Illinois Department of Corrections for recent felony convictions. It is also probable that a parolee who is indicted on a criminal offense within a week and a half of being paroled, is likely to attempt to bring a weapon into a jail if he knows a federal court has ordered he not be searched.(Paroled 2/22/07). On the Supreme Court's continuum of possible punishments, parole is the stronger medicine; ergo, parolees enjoy even less of the average citizen's absolute liberty than do probationers" (citations and internal quotation marks omitted). *Samson v. California*, 547 U.S. 843 (U.S. 2006). In short, the fourth amendment is not violated where a parolee's person is searched. Bryant did not suffer even a theoretical constitutional harm.

If as Plaintiffs' counsel insists, the standard is a $4^h$ Amendment standard, then these facts of the background and propensity of the plaintiffs themselves is relevant to the equation. The "totality of the circumstances" test necessarily includes the experience of the law enforcement agent and the behavior and characteristics of the subject. *United States v. Odum,* 72 F.3d 1279, 1284 (7th Cir. 1995) and *United States v. Zambrana*, 428 F.3d 670, 675 (7th Cir. 2005). In a recent case, the Supreme Court reviewed a situation where Sheriffs executed a search warrant on a home where the persons who were subject of the warrant no longer resided. The Sheriffs required the current occupants to stand naked for a time. The Court held "The Fourth Amendment allows warrants to issue on probable cause, a standard well short of absolute certainty. Valid warrants will issue to search the innocent, and people like Rettele and Sadler unfortunately bear the cost. Officers executing search warrants on occasion enter a house when residents are engaged in private activity; and the resulting frustration, embarrassment, and humiliation may be real, as was true here. When officers execute a valid warrant and act in a reasonable manner to protect themselves from harm, however, the Fourth Amendment is not violated." *L.A. County v. Rettele*, 127 S. Ct. 1989, 1993-1994 (U.S. 2007). In the case here, the plaintiffs has been admittedly held in custody after a probable cause determination and the motivation of the CCDOC in conducting strip searches is the protection of both detainees and staff employed at the jail. This is not a 4th Amendment violation. There is no real likelihood of success on the part of the plaintiffs.

But, there is no controlling decision by the United States Supreme Court or the Seventh Circuit holding that the United States Constitution either requires or does not require individualized suspicion before an inmate who is facing felony charges and who is about to enter

11

a jail's general population can be subjected to a visual strip search for weapons or other contraband.

In sum, courts will review several equitable factors, including: (1) Movant's likelihood of success; (2) Likelihood that movant will suffer irreparable injury if the request for preliminary injunction is denied; (3) Balance of hardships between the parties and coupled against hardship faced by non-parties; and (4) Effect of grant or denial of preliminary injunctive relief on public policy. When this court applies these factors, it is clear that plaintiffs have barely a theoretical claim with no likelihood of success, they have not shown irreparable injury will result in the preliminary injunction were denied, the hardship likely to be suffered by those others in the jail who also depend on the security provided by the CCDOC if some proven violent persons escape close searching is great even when balanced against the plaintiffs privacy interests and the granting of the injunctive relief will have a grave effect on public policy of providing a safe county jail. These factors weigh in favor of the CCDOC and temporary injunctive relief should be denied.

## CONCLUSION

An injunction is an equitable remedy that does not issue as a matter of course, but rather a remedy which courts may grant in their discretion in the extraordinary situations where legal remedies such as monetary damages are inadequate. See, e.g., *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-12, 72 L. Ed. 2d 91, 102 S. Ct. 1798 (1982); *City of Harrisonville v. W.S. Dickey Clay Mfg. Co.,* 289 U.S. 334, 337-38, 77 L. Ed. 1208, 53 S. Ct. 602 (1933). In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction. *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 500 (1941). Thus, the award of an injunction by courts of equity has never been regarded as

strictly a matter of right, even though irreparable injury may otherwise result to the plaintiff. Where a requested injunction adversely affects a public interest the impairment of which an injunction bond cannot compensate, the court may in the public interest withhold relief until a final determination of the rights of the parties. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-313 (U.S. 1982).

The Complaint shows the Plaintiffs cannot prevail in the request for permanent injunction and the claim should be dismissed. Even without the evidence that privacy screens are actually in use, the plaintiffs fail to state a cause of action because they are detainees held on serious felony charges who can be strip searched upon return from Court as mandated by state law and authorized by *Bell v. Wolfish*.

**WHEREFORE,** defendants Thomas Dart, SHERIFF OF COOK COUNTY and County of Cook, pray that this Honorable Court Dismiss the Complaint for Injunctive Relief and order the Plaintiffs to pay costs and attorneys fees for the defense of these matters.

        Respectfully Submitted,
        RICHARD A. DEVINE
        State's Attorney of Cook County

By:    s/Francis J. Catania
      Francis J. Catania
      Assistant State's Attorney

ASA Francis J. Catania ARDC#6203188
Cook County State's Attorney's Office
Richard J. Daley Center
50 W. Washington Street Room 500
Chicago, Illinois 60602
(312) 603-6572