UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHARLES STREETER, KEITH BRYANT, )
and ARTIS JACKSON, individually and on )
behalf of all other similarly situated, )
                                                    )
            Plaintiffs,       )
                                      )    No. 08 C 732
                                      )
v.                                   )    Judge Ruben Castillo

SHERIFF OF COOK COUNTY, and )
COOK COUNTY, ILLINOIS, )
                                      )
           Defendants. )

## MEMORANDUM OPINION AND ORDER

Charles Streeter, Keith Bryant and Artis Jackson ("Plaintiffs") filed this putative class action under 42 U.S.C. § 1983 against the Sheriff of Cook County ("Sheriff") and Cook County, Illinois ("the County") (collectively "Defendants"), challenging a strip search policy at the Cook County Jail ("the Jail") that allegedly violated their Fourth and Fourteenth Amendment rights. (R. 22, Am. Compl.) Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 26, Defs.' Mot. to Dismiss.) For the reasons stated below, Defendants' motion is denied.

## RELEVANT FACTS & PROCEDURAL HISTORY

Plaintiffs are current or former pretrial detainees housed in Division 5 of the Jail. (R. 22, Am. Compl. ¶¶ 1-2.) They allege that between February 3, 2006, and December 20, 2007, they and other male inmates housed in Division 5 were subjected to unreasonable group strip searches when returning to the Division after court proceedings. (Id. ¶¶ 2, 6(b), 17.) Plaintiffs allege that

1

the Sheriff used the clothing room in Division 5 to conduct strip searches of upwards of 45 male inmates at a time. (*Id.* ¶ 4.) Upon entering the room, the men were ordered to line up against the wall and remove all their clothing. (*Id.*) They were then ordered to extend their arms and legs apart and to squat three or four times. (*Id.*) They were forced to remain naked in each other's presence for an extended period of time "and the room smelled foul from body odor." (*Id.*) Plaintiffs allege that Defendants stopped conducting strip searches in this manner as of December 20, 2007, and now conduct the strip searches using individual partitions. (*Id.* ¶ 2.)

In Count I, Plaintiffs allege that these group strip searches violated their rights under the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment, because "the Sheriff subjected the Plaintiffs and members of the class to unreasonable body searches which were demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission." (*Id.* ¶ 26.) In Count II, Plaintiffs allege that by instituting and continuing the group strip and cavity search procedures for male inmates in Division 5 but using private strip searches for female inmates, the Sheriff violated their rights under the Equal Protection Clause of the Fourteenth Amendment. (*Id.* ¶¶ 27-31.)

Defendants move to dismiss Plaintiffs' complaint.[1] (R. 26, Defs.' Mot. to Dismiss.) Defendants argue that the Plaintiffs "have alleged no facts showing the basis for relief," and that they are "detainees held on serious felony charges who can be constitutionally strip searched upon return from Court." (*Id.* at 3, 8.) Defendants also argue that Plaintiffs have "an adequate remedy at law" available to them in *Young v. County of Cook, et. al*, No. 06-552 (N.D. Ill. filed

---

[1] Although Defendants move to dismiss the entire complaint, they do not specifically address Plaintiffs' equal protection claims. (*See* R. 26, Defs.' Mot. to Dismiss.)

2

Jan. 30, 2006) ("*Young*"), a case pending before Judge Kennelly that also involves strip searches at the Jail. (*Id.* at 4-5.)

## LEGAL STANDARD

In determining whether to grant a motion to dismiss under Rule 12(b)(6), the Court accepts all well-pleaded allegations in the complaint as true, and draws all reasonable inferences in the light most favorable to the plaintiff. *Killingsworth v. HSBC Bank*, 507 F.3d 614, 618 (7th Cir. 2007). To properly state a claim, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965.

## ANALYSIS

Plaintiffs bring both Fourth and Fourteenth Amendment claims challenging the propriety of the strip searches. The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend IV. To determine the reasonableness of a search under the Fourth Amendment, a court must balance the degree of the intrusion on the individual's privacy interest against the government's need for the search. *Michael C. v. Gresbach*, 526 F.3d 1008, 1014 (7th Cir. 2008). However, whether pretrial detainees like Plaintiffs have Fourth Amendment privacy rights is an unsettled question. In *Bell v. Wolfish*, 441 U.S. 520, 558-59 (1979), the Supreme

3

Court held that body cavity searches of pretrial detainees returning from contact visits did not violate the Fourth Amendment. *Id.* The Court further stated in dicta, "It may well be argued that a person confined in a detention facility has no reasonable expectation of privacy . . . ." *Id.* at 556. Five years later, in *Hudson v. Palmer*, 468 U.S. 517, 526-30 (1984), the Supreme Court held that a prisoner has no reasonable expectation of privacy in his cell entitling him to Fourth Amendment protections.

The Seventh Circuit's interpretation of *Hudson* has been mixed. In an early case, the Seventh Circuit interpreted *Hudson*'s abrogation of Fourth Amendment protections as applying only to prisoners' cells, and not to prisoners themselves. *Canedy v. Boardman*, 16 F.3d 183 (7th Cir. 1994). Thereafter, the majority opinion in *Johnson v. Phelan*, 69 F.3d 144 (7th Cir. 1995), read *Hudson* to leave inmates without *any* protections under the Fourth Amendment.[2] A subsequent Seventh Circuit opinion appeared to call *Johnson's* broad interpretation of *Hudson* into doubt. *See Peckham v. Wisc. Dept of Corrs.*, 141 F.3d 694, 697 (7th Cir. 1998) ("So, does a prison inmate enjoy any protection at all under the Fourth Amendment against unreasonable searches and seizures? Although we acknowledge the tension between *Johnson* and *Canedy*, we think the answer is 'yes'. . . ."); *but see Peckham*, 141 F.3d at 698 (Easterbrook, J., concurring) ("Rights of seclusion and secrecy vanish at the jailhouse door.").

As this Court reads the case law, the Seventh Circuit has left open the possibility that

---

[2] The majority in *Johnson* also presumed that *Hudson* applied to pretrial detainees as well as prisoners, but in his separate opinion Judge Posner called the matter an "unsettled question." *Johnson*, 69 F.3d at 152 (Posner, J., concurring in part and dissenting in part). A subsequent case recognized that "[a]lthough some cases prefer to say that the rights of pretrial detainees are 'at least' as great as those of convicts. . . the standards applicable to complaints by convicts and by pretrial detainees about unsafe conditions of confinement merge." *Hart v. Sheahan*, 396 F.3d 887, 892-93 (7th Cir. 2005).

4

pretrial detainees could assert a Fourth Amendment claim stemming from an unreasonable strip search. The Court is cognizant that detainees' privacy rights are limited: "[G]iven the considerable deference prison officials enjoy to run their institutions it is difficult to conjure up too many real-life scenarios where prison strip searches of inmates could be said to be unreasonable under the Fourth Amendment." *Peckham*, 141 F.3d at 697. Nevertheless, because of the need to look outside the complaint to assess the justifications for the defendant's conduct, District Courts within this Circuit have declined to dismiss Fourth Amendment claims challenging strip searches at the pleading stage. *See, e.g., Lara v. Sheahan*, No. 06-669, 2007 WL 1030304, at *3 (N.D. Ill. Mar. 30, 2007) (denying motion to dismiss claim challenging strip search because "[w]hether or not legitimate penological concerns exist for these strip searches is a matter better addressed in a motion for summary judgment."); *Young v. County of Cook*, No. 06-552, 2006 WL 4500062, at *5 (N.D. Ill. Aug 25, 2006) ("[W]ithout the benefit of evidence concerning the Sheriff's need to conduct strip searches in the manner performed, the Court cannot determine whether the search performed on [plaintiff] was conducted in a reasonable fashion."); *Aney v. Gilberg*, No. 02-131, 2002 WL 32340878, at *5 (W.D. Wis. Apr. 22, 2002) ("It may be that respondents are able to justify why they initiated the strip search, the manner in which it was conducted and why they conducted it in the middle of the hallway. However, from the allegations in [plaintiff's] complaint, I cannot determine whether the strip search was reasonable.").

Here, Plaintiffs' complaint is not a model of legal draftsmanship, but it can be read to allege that the group strip searches were conducted by Defendants in an unreasonably intrusive manner and went on longer than penologically necessary. (R. 22, Am. Compl. ¶¶ 4, 20, 26.)

5

Taking these allegations as true, and without being able to assess Defendants' justifications for conducting the searches in this manner, the Court cannot conclude at this stage that the searches were reasonable. Accordingly, the Court declines to dismiss Plaintiffs' Fourth Amendment claims.

Plaintiffs also challenge the strip searches under the Due Process Clause of the Fourteenth Amendment. (R. 22, Am. Compl. ¶¶ 23-26.) Unlike the uncertainty surrounding the Fourth Amendment, there is no question that strip searches can violate the Eighth Amendment's ban on cruel and unusual punishment. *See Peckham*, 141 F.3d at 697; *Johnson*, 69 F.3d at 146-47. In the context of pretrial detainees, the applicable standard is the Due Process Clause of the Fourteenth Amendment. *Bell*, 441 U.S. at 535; *see also Lopez v. City of Chicago*, 464 F.3d 711, 719 (7th Cir. 2006) ("[T]he protections of the Fourth Amendment apply at arrest and through the *Gerstein* probable cause hearing, due process principles govern a pretrial detainee's conditions of confinement after the judicial determination of probable cause, and the Eighth Amendment applies following conviction."). The analysis under the Due Process Clause is essentially the same as the Eighth Amendment inquiry. *See Hart v. Sheahan*, 396 F.3d 887, 892-93 (7th Cir. 2005) ("[W]hen the issue is whether brutal treatment should be assimilated to punishment, the interests of the prisoner is the same whether he is a convict or a pretrial detainee. In either case he (in this case she) has an interest in being free from gratuitously severe restraints and hazards, while the detention facility has an interest in protecting the safety of inmates and guards and preventing escapes."). Under the Due Process Clause, "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Bell*, 441 U.S. at 539. "Conversely, if a restriction or

condition is not reasonably related to a legitimate goal---if it is arbitrary or purposeless---a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees." *Id.*

As the Seventh Circuit has observed, "There is no question that strip searches may be unpleasant, humiliating, and embarrassing to prisoners, but not every psychological discomfort a prisoner endures amounts to a constitutional violation." *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003). Instead, the Constitution prohibits only the unnecessary and wanton infliction of pain, and thus forbids punishment that is "so totally without penological justification that it results in the gratuitous infliction of suffering." *Calhoun*, 319 F.3d at 939 (citation omitted). Only those strip searches that are "maliciously motivated, unrelated to institutional security, and hence totally without penological justification are considered unconstitutional." *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004). Accordingly, to state a due process claim, the plaintiff must allege that the strip search was "conducted in a harassing manner intended to humiliate and inflict psychological pain." *Calhoun*, 319 F.3d at 939.

Here, the complaint can be read to allege that the group strip searches were conducted in a manner intended to humiliate and embarrass detainees, and that the searches went on longer than necessary. (R. 22, Am. Compl. ¶¶ 4, 20, 26.) Taking these allegations as true, such conduct could establish a due process violation. It may be that jail officials can articulate valid reasons why the searches were conducted in this manner, so as to ultimately defeat Plaintiffs' claims. At this stage, however, the Court cannot consider evidence outside the complaint to assess the jail officials' reasons for acting as they did. *See Hart*, 396 F.3d at 892-93 (reversing dismissal of complaint brought by pretrial detainees because jail officials' reasons for taking particular action

7

could not be assessed at pleading stage). For these reasons, the Court rejects Defendants' argument that Plaintiffs have failed to state a claim under the Due Process Clause.[3]

Defendants also contend that this case should be dismissed because Plaintiffs have an adequate remedy available in *Young*. (*See* R. 26, Defs.' Mot. to Dismiss at 4-5.) In *Young*, a class of pretrial detainees is challenging the legality of strip searches they were subjected to upon their initial intake at the Jail; in this case, by contrast, Plaintiffs are challenging strip searches they were subjected to upon their return to the Jail after court proceedings. (*See Young*, No. 06cv552 (N.D. Ill. filed Jan. 30, 2006).) Judge Kennelly denied Defendants' motion to join this case with *Young*, in part because he determined that different penological considerations would likely be at issue in assessing the reasonableness of the searches, given the different time frames and circumstances under which they occurred. (*Young v. County of Cook, et al.*, No 06cv552, Tr. of Proceed., May 22, 2008, at 6-7.) This Court agrees with Judge Kennelly's assessment that the claims raised in *Young* are different than those raised here, and finds no basis to conclude that Plaintiffs could obtain relief for the constitutional violations they allege in the context of *Young*. Accordingly, the Court rejects Defendants' argument.

---

[3] The Court finds unavailing Defendants' citation to several unpublished, out-of-district cases interpreting the law of the Sixth and Ninth Circuits, since this Court is governed by the case law of the Seventh Circuit. (*See* R. 26, Defs.' Mot. to Dismiss at 6-7; R. 32, Defs.' Reply at 3-4.) The Court notes additionally that one of the cases cited by Defendants was decided at the summary judgment stage, and another case did not decide the constitutionality of strip searches at all, but instead involved the court's award of attorneys fees to a class of prisoners who settled their claims challenging the legality of strip searches. *See Adams v. County of Sacramento*, No. 05-2204, 2007 WL 708869 (E.D. Cal. Mar. 6, 2007); *Craft v. County of San Bernardino*, No. 05-359, 2008 WL 916965 (C.D. Cal. Apr. 1, 2008).

## CONCLUSION

For all these reasons, Defendants' motion to dismiss (R. 26) is denied. The parties are directed to reevaluate their settlement positions in light of this opinion and to exhaust all efforts to settle this case. The parties shall appear for a status hearing on **October 1, 2008, at 9:45 a.m.** to set a firm litigation schedule for this case.

Entered: _____
Judge Ruben Castillo
United States District Court

**Dated: September 15, 2008**