

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES STREETER, KEITH BRYANT, and ARTIS JACKSON, individually and on behalf of all others similarly situated, )))) | |
| Plaintiffs, ) | |
| ) | No. 08 C 732 |
| v. ) | |
| ) | Judge Ruben Castillo |
| SHERIFF OF COOK COUNTY and COOK COUNTY, ILLINOIS, ))) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Charles Streeter, Keith Bryant, and Artis Jackson ("Plaintiffs") filed this putative class action under 42 U.S.C. § 1983 against the Sheriff of Cook County ("Sheriff") and Cook County, Illinois ("the County) (collectively "Defendants"), challenging a strip search policy at the Cook County Jail ("the Jail") that allegedly violated their Fourth and Fourteenth Amendment rights. (R. 22, Am. Compl.) Currently before the Court is Plaintiffs' motion to certify a class pursuant to Federal Rule of Civil Procedure 23. (R. 48, Pls.' Mot. for Class Cert.) For the following reasons, the motion is granted with a minor modification of the class definition.

### BACKGROUND

Plaintiffs are current or former pretrial detainees housed in Division 5 of the Jail. (R. 22, Am. Compl. ¶ 1.) They allege that between February 3, 2006, and December 20, 2007, they and other male inmates were subject to unreasonable group strip searches upon returning to Division 5 after court proceedings. (*Id.* ¶¶ 2, 6(b).) Specifically, Plaintiffs allege that the Sheriff

1

conducted strip searches of "upwards of 45 pretrial detainees at a time" in a highly intrusive manner, and without individual partitions in the clothing room of Division 5. (*Id.* ¶¶ 3-4.) As of December 20, 2007, Defendants stopped conducting group strip searches of male inmates and began conducting the searches behind individual partitions. (*Id.* ¶ 2.) Since 2001, female inmates were given individualized strip searches behind privacy screens. (*Id.* ¶ 3.)

Plaintiffs allege two separate claims in their complaint. In Count I, they allege that the group strip searches violated their rights under the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment because they were conducted in an unreasonable and unnecessarily humiliating manner. (*Id.* ¶¶ 15-26.) In Count II, they allege that Defendants subjected male inmates to group strip searches while using private strip searches for female inmates, violating their rights under the Equal Protection Clause of the Fourteenth Amendment. (*Id.* ¶¶ 27-32.) Plaintiffs ask this Court to certify the following class:

> All male inmates at the Cook County Jail who, from February 3, 2006, to and including December 20, 2007, returned to Division 5 at the Jail following a court appearance and were subjected to a group strip search.

(R. 48, Pls.' Mot. for Class Cert. at 1.)

## LEGAL STANDARDS

Plaintiffs seeking class certification bear the burden of proving that the class satisfies the requirements of Rule 23. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006); *Randolph v. Crown Asset Mgmt., LLC*, 254 F.R.D. 513, 516 (N.D. Ill. 2008). Under Rule 23(a), a class may be certified if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the

2

representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Failure to satisfy any one of these requirements precludes class certification. *Oshana*, 472 F.3d at 513; *Randolph*, 254 F.R.D. at 516. If the potential class satisfies these requirements, it must then satisfy at least one of the requirements of Rule 23(b). *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008).

A district court has broad discretion to certify a class and may modify a proposed class definition if modification will render the definition adequate. *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003). In exercising its discretion, the Court does not presume that all well-pleaded allegations are true and can look "beneath the surface" of a complaint to conduct the inquiries required by Rule 23. *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 677 (7th Cir. 2001). However, the Court will not address issues relating to the underlying merits if those issues do not affect class certification. *Herkert v. MRC Receivables Corp.*, 254 F.R.D. 344, 348 (N.D. Ill. 2008). "[T]he propriety of class certification should not turn on [the] likelihood of success on the merits." *Payton v. County of Kane*, 308 F.3d 673, 677 (7th Cir. 2002).

## ANALYSIS

Plaintiffs argue that the proposed class satisfies the requirements of Rule 23(a) and Rule 23(b)(3). (R. 50, Pls.' Mem. in Supp. of Class Cert., at 3-9 ("Pls.' Mem.").) Defendants respond that the proposed class fails to satisfy any of the requirements of Rule 23(a) or Rule 23(b)(3). (R. 51, Cook County's Mem. in Opp. to Class Cert., at 7-13 ("Cook County's Mem."); R. 54, Sheriff's Mem. in Opp. to Class Cert., at 9-15 ("Sheriff's Mem.").) When determining whether to certify a class, the Court is not limited to the arguments of the party opposing certification and must make an independent determination about the appropriateness of certifying the class.

3

*Davis*, 321 F.3d at 649; *Heckert*, 254 F.R.D. at 348. Accordingly, the Court considers Defendants' arguments in the context of analyzing each of the Rule 23 requirements.

## I. Rule 23(a)

### A. Numerosity

To satisfy numerosity, Plaintiffs must prove that the class is so large as to make joinder impractical. Fed. R. Civ. P. Rule 23(a)(1). A class of forty or more is generally sufficient to establish numerosity. *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002). The Court may rely on common sense assumptions or reasonable inferences when ascertaining the size of the class. *Phipps v. Sheriff of Cook County*, 249 F.R.D. 298, 300 (N.D. Ill. 2008). However, "mere speculation" or "conclusory allegations" are not sufficient to establish numerosity. *Arreola*, 546 F.3d at 797.

Plaintiffs assert that the proposed class includes at least 10,000 persons. (R. 50, Pls.' Mem. at 3-4.) This estimate is based on Jail records showing that around 100,000 detainees were admitted to the Jail in 2006, and about 10% of those detainees were housed in Division 5. (*Id.*) Defendants contend that the class size lacks sufficient evidentiary support. (R. 51, Cook County's Mem. at 7.) The Court disagrees. Plaintiffs have provided a reasonable basis upon which to determine the size of the class using available statistical information, and indeed, evidence submitted by the Sheriff indicates that the proposed class would consist of at least several thousand members. (*See* R. 54-2, Sheriff's Mem., Hickerson Aff. ¶ 10) (estimating that between 50-75 inmates return to Division 5 from court every day). Joinder is impractical for a class of that size. *See Randolph*, 254 F.R.D. at 517 (finding that "joinder of potentially hundreds of these suits is impractical"). Therefore, the Court concludes that numerosity is satisfied.

4

## B. Commonality

In order to meet the commonality requirement, Plaintiffs must show that "there are questions of law or fact common to the class." Fed. R. Civ. P. Rule 23(a)(2). "A common nucleus of operative facts is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998); *Puffer v. Allstate Ins. Co.*, 255 F.R.D. 450, 458 (N.D. Ill. 2009). Plaintiffs have identified four questions of law and fact common to the class: "(1) Are the group strip searches conducted in an unreasonably intrusive manner? (2) Do the group strip searches take longer than is penologically necessary? (3) Were the group strip searches conducted in a manner intended to humiliate and embarrass detainees? (4) Were similarly situated female inmates subjected to the same sort of group strip searches as the proposed plaintiff class?" (R. 50, Pls.' Mem. at 4.) These questions concern "standardized conduct towards members of the proposed class," which is sufficient to establish commonality. *Keele*, 149 F.3d at 594.

Defendants respond that there is no commonality because the strip searches are constitutionally permissible. (R. 51, Cook County's Mem. at 8-9.) This argument essentially attacks the underlying merits of Plaintiffs' claims, which is not an appropriate consideration in ruling on a class certification motion. *See Randolph*, 254 F.R.D. at 517 ("[T]he Court must evaluate the class certification motion without regard to the ultimate merits of Plaintiff[s'] claims."). This argument also ignores this Court's prior determination that the validity of the searches must be decided at later stages of the litigation when Defendants' reasons for conducting the searches as they did can be assessed. *See Streeter v. Sheriff of Cook County*, 576 F. Supp. 2d 913, 917-18 (N.D. Ill. 2008). For these reasons, the Court concludes that the

proposed class satisfies the commonality requirement.

C. **Typicality**

To satisfy typicality, Plaintiffs must prove that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[A] claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [the] claims are based on the same legal theory." *Arreola*, 546 F.3d at 798. Plaintiffs argue that their claims are based on the same course of conduct that affected all members of the proposed class: the practice of conducting group strip searches at Division 5. (R. 50, Pls.' Mem. at 5-6.) Defendants respond that individual issues such as "what each inmate was arrested for, their criminal history, and whether they felt the search too intrusive or too embarrassing" prevent a finding of typicality. (R. 54, Sheriff's Mem. at 11, 14.) These issues will not destroy typicality, however, because "the likelihood of some range of variation in how different groups of new detainees were treated does not undermine the fact that the claims of each class [member] share a common factual basis and legal theory." *Young v. County of Cook*, No. 06 C 552, 2007 WL 1238920, at *6 (N.D. Ill. April 25, 2007) Plaintiffs challenge a standard strip search practice, which they claim all inmates in Division 5 were subjected to upon their return from court proceedings, regardless of their individual circumstances. The named Plaintiffs "are challenging the same strip search policies and methods as the [class] they seek to represent." *Id.* (certifying a class of male detainees who were strip searched upon entry to the Cook County Jail). Accordingly, the Court concludes that typicality is satisfied.

6

### D. Adequacy

To satisfy adequacy, Plaintiffs must show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. Rule 23(a)(4). In assessing adequacy, "[t]he Court must determine whether the named Plaintiffs: (1) have antagonistic or conflicting claims with other members of the class; (2) have a sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) have counsel that is competent, qualified, experienced and able to vigorously conduct the litigation." *Hudson v. City of Chicago*, 242 F.R.D. 496, 503 (N.D. Ill. 2007) (citations omitted).

Defendants argue that the named Plaintiffs are inadequate because "felons cannot be adequate class representatives." (R. 51, Cook County's Mem. at 10; *see also* R. 54, Sheriff's Mem. at 11-12.) Defendants cite no case law supporting this proposition, and indeed, if convicted felons could not serve as class representatives, "there would be no such thing as a class action in the prison or jail context." *Parish v. Sheriff of Cook County*, No. 07 C 4369, 2008 WL 4812875, at *5 (N.D. Ill. Oct. 24, 2008). Obviously, there are hundreds of cases in this district alone where prisoners or pretrial detainees with criminal convictions have served as class representatives. *See, e.g., Parish*, 2008 WL 4812875, at *5; *Young*, 2007 WL 1238920, at *6-7; *Bullock v. Sheahan*, 225 F.R.D. 227 (N.D. Ill. 2004). To the extent Defendants are arguing that the named Plaintiffs have credibility problems because of their convictions that preclude them from serving as class representatives, "[c]redibility is not a requirement of a class representative, and whether or not a plaintiff is credible is irrelevant to that person's ability to be a class representative." *Phipps*, 249 F.R.D. at 301 (citation omitted). Furthermore, Defendants have not shown that the named Plaintiffs' criminal histories differentiate them from other class members

or make their interests different from or antagonistic to those of the class as a whole.

Defendants also argue that named Plaintiff Artis Jackson ("Jackson") is not a proper class representative because he was not housed in Division 5 during the class period. (R. 51, Cook County's Mem. at 10.) However, the Court is persuaded by Plaintiffs' evidence that Defendants have confused the Artis Jackson named here with another Artis Jackson, also once housed at the Jail, who has a different birth date and police "IR" number.[1] (R. 56, Pls.' Reply at 10; *id.*, Ex. 1, Flaxman Decl.)

Upon review, the Court concludes that the named Plaintiffs meet the adequacy requirements. Defendants do not challenge the adequacy of class counsel, and the Court finds them to be experienced in prisoner litigation and qualified to serve as class counsel in this case. *See, e.g., Phipps*, 249 F.R.D. at 298; *Calvin v. Will County*, No. 03 C 3086, 2004 WL 1125922 (N.D. Ill. May 17, 2004); *Bullock*, 225 F.R.D. at 227. For the reasons stated above, the proposed class satisfies all four requirements of Rule 23(a).

## II. Rule 23(b)(3)

### A. Predominance

The predominance requirement of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*,

---

[1] Plaintiffs appear to be asking the Court to grant them leave, retroactively, to add Jackson as a named Plaintiff in their amended complaint. (R. 56, Pls.' Reply at 10 n.3.) Although the amended complaint was filed as a matter of right under Rule 15(a)(1), it does appear that Plaintiffs were required to obtain leave from the Court to add Jackson as a party. *See Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732, 736 (7th Cir. 1986) ("Although Federal Rule of Civil Procedure 15(a) permits a party to freely amend its complaint in a timely fashion . . . Rule 21 requires a court order to add or drop parties."). This is a correctable defect, however, and does not require dismissal. *Id.* The Court grants Plaintiffs leave to add Jackson as a named Plaintiff, retroactive to the date the amended complaint was filed.

8

521 U.S. 591, 623 (1997). The predominance requirement, although similar to questions of commonality and typicality, is more demanding than either of those Rule 23(a)(2) requirements. *Id.* at 623-24. When a proposed class challenges a uniform policy, the validity of that policy tends to be the predominant issue in the litigation. *Herkert*, 254 F.R.D at 352. However, if individual issues predominate, a class action is not a superior method for adjudication and certification should be denied. *Szabo*, 249 F.3d at 675.

Defendants argue that individual issues regarding the reasonableness and necessity of the searches preclude a finding of predominance. (R. 54, Def. Sheriff's Mem. at 12-14.) The Court disagrees. Plaintiffs allege that the Sheriff had a uniform practice that applied to all male inmates returning from court regardless of their individual circumstances. *See Streeter*, 576 F. Supp. 2d at 916-17. Plaintiffs' claims turn on the uniform manner in which the group strip searches were conducted, and this question predominates over any individual issues. *See Calvin*, 2004 WL 1125922, at *4 ("[T]he ultimate legal question is not whether jail personnel made erroneous reasonable suspicion determinations regarding each individual, but whether the Sheriff's policy avoided all such inquiry. . . ."); *Young*, 2007 WL 1238920, at *8 (finding uniform strip search practice predominated over individual issues); *Bullock*, 225 F.R.D. at 230 (finding predominance satisfied where primary issue was whether sheriff violated inmates' rights under strip search policy). Accordingly, this Court finds that the predominance requirement is satisfied.

### B. Superiority

The second criterion under Rule 23(b)(3), superiority, requires Plaintiffs to demonstrate that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. Rule 23(b)(3). "A class action is superior where potential

9

damages may be too insignificant to provide class members with incentive to pursue a claim individually." *Herkert*, 254 F.R.D. at 352-53. The class action device is also superior to other methods of adjudication "when the judicial economy from consolidation of separate claims outweighs any concern with possible inaccuracies from their being lumped together in a single proceeding for decision by a single judge or jury." *Mejdrech v. Met-Coil Systems Corp.*, 319 F.3d 910, 911 (7th Cir. 2003).

Plaintiffs argue that a class action would be more manageable than hundreds of individual cases brought by Jail inmates, particularly when the amount of damages per class member is likely to be in the order of $100 to $1,000. (R. 50, Pls.' Mem. at 7-8.) Cases involving nominal damages are especially well-suited to resolution by class action. *Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438, 444-45 (N.D. Ill. 2008).

Defendants argue that a class action is not superior for several reasons. (R. 51, Cook County's Mem. at 11-13; R. 54, Sheriff's Mem. at 14-15.) First, they argue that the *Duran* consent decree precludes any further litigation by pretrial detainees. (R. 54, Sheriff's Mem. at 14-15.) This argument is without merit. The *Duran* consent decree addresses such issues as overcrowding, food quality, personal hygiene, visiting privileges, law library access, and detainee exercise at the Jail. *See Duran v. Elrod*, 760 F.2d 756 (7th Cir. 1985); *see also Arreola*, 546 F.3d at 797 (observing that *Duran* addressed "overcrowding and related issues"). The decree did not address the group strip searches at issue in this litigation. *See Young*, 2006 WL 4500062, at *6-7 (finding that *Duran* decree did not preclude claims based on an alleged unconstitutional strip search policy at the Jail).

Defendants next argue that a class action is not superior because class members were not

actually injured by the searches: "Since there is no showing of any 'mad rush to the courthouse' to file jail strip search cases, perhaps it's because there is no true injury from such searches." (R. 51, Cook County's Mem. at 12.) Instead, Defendants argue that class members actually benefitted from the searches because they served to remove contraband from the Jail. (*Id.*) The Court rejects this argument. Plaintiffs have alleged that they *were* injured by the searches, and if their constitutional rights were violated, they would be entitled to an award of nominal damages even if they cannot prove actual physical or emotional injury. *See Carey v. Piphus*, 435 U.S. 247 (1978). The fact that class members may only recover a small amount of damages weighs in favor of certifying a class. As the Seventh Circuit observed, "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Pastor v. State Farm Mut. Auto. Ins. Co.*, 487 F.3d 1042, 1047 (7th Cir. 2007).

Defendants also argue that the class definition is unworkable because every inmate of the Jail returns to Division 5 after a court proceeding, and thus the class definition encompasses inmates who were housed in divisions other than Division 5. (R. 51, Cook County's Mem. at 13.) Defendants argue that ascertaining the members of the proposed class would require a costly and burdensome search of the Jail's records to determine "who was strip searched and where." (*Id.* at 13-14.) In their reply, Plaintiffs clarify that they only intended to include inmates who were actually *housed* in Division 5 in the class definition. (R. 56, Pls.' Reply at 4.) The Court agrees with Defendants that there is some ambiguity in the proposed class definition, and will modify the definition accordingly to include only those inmates who were housed in Division 5. With this clarification, ascertaining the members of the class will not be "so

daunting as to make the class definition insufficient." *Herkert*, 254 F.R.D. at 348-49 (amending class definition to provide more readily available means to ascertain the class).

With the class definition modified, the Court concludes that Plaintiffs have satisfied the predominance and superiority requirements of Rule 23(b)(3).

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiffs' motion for class certification (R. 48), with a minor modification of the class definition. Plaintiffs will be permitted to represent the following class:

> All male inmates at the Cook County Jail who, from February 3, 2006 to and including December 20, 2007, were housed in Division 5 of the Jail and returned to Division 5 following a court appearance and were subjected to a group strip search.

The parties are directed to reevaluate their settlement positions in light of this opinion and to exhaust all efforts to settle this case. The parties shall appear for a status hearing on **April 17, 2009 at 9:45 a.m.** to set a firm litigation schedule for this case.

Entered: _/s/ Ruben Castillo_

Judge Ruben Castillo
United States District Court

**Dated: April 7, 2009**